# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN DAVID RUELAS,

        Petitioner,                     Case Number: 06-CV-11994

v.                                       HON. DENISE PAGE HOOD

HUGH WOLFENBARGER,

        Respondent.
_____/

## OPINION AND ORDER
## 1) CONDITIONALLY GRANTING PETITIONER'S WRIT OF HABEAS CORPUS &
## 2) DENYING PETITIONER'S MOTION FOR EVIDENTIARY HEARING AS MOOT

Petitioner John David Ruelas has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Standish Maximum Correctional Facility in Standish, Michigan, challenges his second-degree murder conviction. For the reasons set forth below, the Court conditionally grants the petition.

## I. Background

Petitioner's conviction arises out of the January 24, 2002 beating death of Margaret Ruelas, his seventy-six year old mother. On July 17, 2002, Petitioner pleaded guilty to open murder in exchange for the dismissal of a second felony offender charge. Following a degree hearing, Petitioner was found guilty of second-degree murder. He was sentenced to 250 months to 40 years of imprisonment.

Petitioner filed an appeal in the Michigan Court of Appeals. The Michigan Court of Appeals dismissed the appeal for lack of jurisdiction. People v. Ruelas, No. 243446 (Mich. Ct. App. Sept. 17, 2002).

Petitioner filed a motion to withdraw his guilty plea in the trial court. The trial court denied the motion on January 5, 2004. People v. Ruelas, No. 02-000770-FC (Jackson County Cir. Ct. Jan. 5, 2004).

Petitioner then filed another motion to withdraw his plea in the trial court. The trial court construed the motion as a motion for relief from judgment and denied the motion. People v. Ruelas, No. 02-000770-FC (Jackson County Cir. Ct. Jan. 9, 2004).

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, seeking to appeal the trial court's denial of his motion to withdraw plea. The application was denied. People v. Ruelas, No. 253463 (Mich. Ct. App. Mar. 3, 2004). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court which was denied. People v. Ruelas, 471 Mich. 927 (2004).

Petitioner filed a second application for leave to appeal in the Michigan Court of Appeals, this time seeking to appeal the trial court's denial of his second motion to withdraw guilty plea, which was construed by the trial court as a motion for relief from judgment. The Michigan Court of Appeals denied leave to appeal. People v. Ruelas, No. 260055 (Mich. Ct. App. July 29, 2005). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was also denied. People v. Ruelas, 474 Mich. 1067 (2006).

While the second application for leave to appeal was pending before the Michigan Supreme Court, Petitioner filed a motion for acquittal in the trial court. The trial court denied the motion. People v. Ruelas, No. 02-000770-FC (Jackson County Cir. Ct. Dec. 14, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

2

I. Petitioner's lower court counsel and appellate counsel were ineffective within the meaning of Const. 1963, Art. 1, §20, and the Sixth Amendment to the United States Constitution.

II. Petitioner's statement to Detective Schutte was coerced by physical violence and threats of physical violence. Trial counsel was ineffective for failing to raise this issue which created an involuntary plea.

III. Was Petitioner harmed by error to advise the petitioner that the trial court could consider convicting the Petitioner of manslaughter at the degree hearing?

IV. Was Petitioner harmed when the trial court committed error when it did not advise the Petitioner that he would be giving up a constitutional right of his right to appeal?

V. The trial court erred in scoring prior record variable at 25 points resulting in defendant's sentence being improperly enhanced on that basis, and the basis of factual findings not admitted by his plea, *i.e.*, the scoring of offense variables, contrary to his Sixth Amendment right to a jury trial and his Fourteenth Amendment right to due process.

Respondent filed a motion to dismiss the petition on the ground that the petition contained unexhausted claims. The Court denied the motion, because no avenue remained available for Petitioner to present his unexhausted claims. He had already filed a motion for relief from judgment in state court, and the Michigan Court Rules prohibit parties from filing second or successive motions for relief from judgment. See Mich. Ct. R. 6.502(G)(1). The Court directed Respondent to file an answer addressing the claims presented in the petition. Respondent has now filed an Answer and Petitioner has filed a Reply.

## II. Motion for Evidentiary Hearing

Petitioner has filed a Motion for Evidentiary Hearing. Rule 8, Rules Governing Section 2254 Cases in the United States District Courts states, in pertinent part:

> If the petition is not dismissed at a previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the

expanded record, if any, determine whether an evidentiary hearing is
required.

See Rule 8, Rules Governing Section 2254 Cases. In addition, the federal court may conduct an evidentiary hearing only if the facts underlying the claim, if true, would establish a constitutional error. Sawyer v. Hofbauer, 299 F.3d 605, 610 (6th Cir. 2002).

Based upon the analysis that follows, the Court finds that an evidentiary hearing is unnecessary for a just resolution of Petitioner's claims.

### III. Discussion

### A. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Under Section 2254(d), federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual

4

determinations. 28 U.S.C. § 2254(e)(1)[1]; see also Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous[.]").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

5

application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

### B. Alleged Ineffective Assistance of Trial and Appellate Counsel

In his first and second claims for habeas corpus relief, Petitioner argues that his trial and appellate counsel were ineffective. Petitioner argues that trial counsel was ineffective in: (i) failing to file a motion to suppress his confession; (ii) failing to adequately explain the rights Petitioner would forfeit by pleading guilty, (iii) and failing to correctly advise Petitioner that the trial judge would not consider the offense of manslaughter at the degree hearing.

Respondent argues that Petitioner's claims of ineffective assistance of counsel are procedurally defaulted. The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice

6

test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." Rust, 17 F.3d at 162; see also Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30.

This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. See Coleman, 501 U.S. at 729-30. The Michigan Supreme Court, the last state court to address these claims, which were presented for the first time on collateral review, denied leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." People v. Ruelas, No. 129271 (Mich. Nov. 29, 2005).

The Sixth Circuit Court of Appeals has held that M.C.R. 6.508(D) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice where the rule was in effect at the time of a petitioner's direct appeal. Luberda v. Trippett, 211 F.3d 1004, 1007 (6th Cir. 2000) (citing Rogers v. Howes, 144 F.3d 990 (6th Cir. 1998)). M.C.R. 6.508(D) was enacted in October 1989. Petitioner was convicted in 2002. Thus, M.C.R. 6.508(D) was a firmly established and regularly followed state procedural bar at the time of Petitioners' conviction. The Sixth Circuit Court of Appeals has

7

also held that even a judgment as brief as the one by which the Michigan Supreme Court denied leave to appeal in this case is sufficient to invoke the doctrine of procedural default. Ivory v. Jackson, 509 F.3d 284, 292-93 (6th Cir. 2007); Simpson v. Jones, 238 F.3d 399, 408 (6th Cir. 2000). Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

This Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner also asserts that his appellate attorney was ineffective in failing to raise these claims on direct review. The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). The last state court to issue an opinion regarding Petitioner's ineffective assistance of appellate counsel claim, the Michigan Supreme Court, held that this claim also was barred from review because Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." People v. Ruelas, No. 129271 (Mich. Nov. 29, 2005).

Here, Petitioner fails to allege any cause to excuse the procedural default of his

8

ineffective assistance of trial counsel and appellate counsel claims. These claims are procedurally defaulted unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court has explicitly tied the miscarriage of justice exception to a petitioner's claim of innocence. Schlup, 513 U.S. at 321. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. In other words, a petitioner must assert a constitutional error along with a claim of innocence. Id. Here, Petitioner has not supported his allegation of constitutional error with new reliable evidence of actual innocence. Accordingly, Petitioner's claims that his constitutional rights were violated by the ineffective assistance of trial counsel and appellate counsel are procedurally barred.

### C. Voluntariness of Petitioner's Custodial Statement

Petitioner argues that his custodial statement was coerced, because the interrogating police officer physically assaulted him and threatened further abuse. This argument fails, however, because Petitioner submitted a guilty plea to open murder. A guilty plea waives any non-jurisdictional, constitutional challenge a petitioner might have; the petitioner may attack only the nature of his plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973).

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Id. Petitioner's "guilty plea prevents any collateral challenge to the voluntariness of his

confession." McCann v. Trombley, 2007 WL 2318730, *3 (E.D. Mich. Aug. 10, 2007) (citing United States v. Wright, 873 F.2d 437, 442 (1st Cir.1989); Rogers v. Maggio, 714 F.2d 35, 38 (5th Cir.1983); United States v. Montoya-Robles, 935 F. Supp. 1196, 1204 n. 5 (D. Utah 1996)).

### D.  Voluntariness of Plea

Petitioner argues that his plea was involuntary because: (i) his plea was based upon the mistaken advice that manslaughter would be considered at the degree hearing; (ii) the trial court failed to inform him that a second-degree murder conviction would not result in a sentence of probation; and (iii) the trial court failed to inform him that a guilty plea waived his right to an appeal as of right.

The Supreme Court has held that, to be valid, a guilty plea must be voluntarily and intelligently made. Brady v. U.S., 397 U.S. 742, 748-49 (1970). To be voluntary and intelligent, the plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." Id. at 748. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." Id. at 749. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. Id. at 755, 757. For a defendant's plea of guilty to be voluntary, the defendant "must be aware of the maximum sentence that could be imposed." King v. Dutton, 17 F.3d 151, 154 (6th Cir. 1994) (citing Hart v. Marion Correctional Institute, 927 F.2d 256, 259 (6th Cir. 1991)). Additionally, the defendant must at lease have a "sufficient awareness of the relevant circumstances and likely consequences" of his plea. Hart, 927 F.2d 257.

**1.**

Petitioner argues that he is entitled to habeas relief, because the state trial court misinformed him that he could be found guilty of manslaughter under the open murder statute.[2] Although a judge or jury may now consider the offense of manslaughter under Michigan's open murder statute, People v. Mendoza, 468 Mich. 527, 529 (2003), this was not the case at the time of Petitioner's July 17, 2002 plea. People v. Watkins, 468 Mich. 233, 238 (2003). The Court therefore analyzes this claim under the harmless error standard set forth in Fry v. Pliler, __ U.S. __, 127 S. Ct. 2321 (2007). Wilson v. Mitchell, 498 F.3d 491, 503 (6th Cir. 2007). The standard for determining whether the error was harmless is "whether the guilty verdict actually rendered in . . . [Petitioner's] trial was surely unattributable to the error." Id. at 504; see also Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (noting that habeas relief may be granted only where the error had substantial and injurious effect or influence on the outcome of the case).

In the present case, the Court cannot conclude that outcome of Petitioner's case was unattributable to the trial court's error. Petitioner indicated in his state court motion to withdraw his guilty plea that he would not have pled guilty to open murder if he had known that his plea to open murder would have precluded the trial judge's consideration of a manslaughter conviction. (Dkt. #24 at 45.) Moreover, even though the trial court indicated at the July 17, 2002 plea hearing that it would consider the offense of manslaughter with respect to Petitioner's open murder plea, (Dkt. #14 at 6,) there is no indication in the record of the August 2, 2002 degree

---

[2]Although Respondent argues that this claim is procedurally defaulted, (Answer at 9-12,) the Court does not agree. Petitioner timely filed his motion to withdraw his plea in the state trial court pursuant to MCR 6.310(C). See People v. Podlaszuk, 480 Mich. 866, 866 (2007) (noting that a defendant's MCR 6.310(C) motion is timely if it is filed within 12 months after the appointment of his appellate counsel, so long as his appellate counsel was appointed on or before December 31, 2005). Here, Petitioner's appellate counsel was appointed on July 16, 2003. (Dkt. #12 at 5.) His first motion to withdraw his plea was filed on July 18, 2003. (Id.)

hearing that the trial court considered manslaughter during its deliberation. (Dkt. #18 at 3-4.) The trial court judge did not explicitly reference manslaughter in announcing his finding of second-degree murder. (*Id.*) That the evidence against Petitioner supported a finding of second-degree murder does not make the trial court's error harmless. See Wilson, 498 F.3d at 504 (noting that the Fry and Brecht inquiries are not "whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered"). Accordingly, Petitioner is entitled to habeas relief on this claim. See Bousley v. United States, 523 U.S. 614, 618-19 (1998) (noting that if neither defendant, nor his counsel, nor the trial court correctly understood the crime with which defendant was charged, defendant's guilty plea is constitutionally invalid).

**2.**

Petitioner argues that he is entitled to habeas relief, because the state trial court did not inform him that a second-degree murder conviction would not result in a sentence of probation. This argument lacks merit, because a defendant need only be informed of his maximum possible sentence. Hart, 927 F.2d at 259; Pitts v. US, 763 F.2d 197, 201 (6th Cir. 1985). Here, the record indicates that Petitioner was aware of his maximum sentence. At Petitioner's plea hearing, the court informed Petitioner that his maximum possible sentence, if convicted of first-degree murder, was "life without parole." (Dkt. # 14 at 6.) The court subsequently asked Petitioner if he understood this maximum possible sentence. (*Id.*) In response, Petitioner replied, "Yes, sir." (*Id.*) Based upon his in-court statements, Petitioner is precluded from raising a claim that he did not understand the possible sentences which were associated with his plea. See Ramos v. Rogers, 170 F.3d 560, 564 (6th Cir. 1999) (a petitioner challenging the voluntariness of his guilty plea is bound by his in-court statements).

**3.**

Petitioner argues that he is entitled to habeas relief, because the state trial court failed to inform him that a guilty plea waived his right to an appeal of right. This argument also lacks merit. While the trial judge did not give Petitioner the advice required by Mich. Ct. Rule 6.302(B)(5) that "any appeal from the conviction and sentence pursuant to the plea will be by application for leave to appeal and not by right," there is no authority that such advice is required under the federal constitution. Petitioner was advised that he was waiving the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination, as constitutionally required under Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). (See Dkt. #14 at 8-9.)

### E. Scoring of Offense Variables

Petitioner claims that he is entitled to habeas corpus relief because the trial court incorrectly scored certain offense variables and improperly increased his sentence in reliance upon facts not presented at the plea or sentencing hearings in violation of the Sixth Amendment and Fourteenth Amendment. See Blakely v. Washington, 543 U.S. 296, 303-05 (2004) (state trial court's action in sentencing defendant beyond the statutory maximum of the standard range for his offense based upon judicial finding of deliberate cruelty violated Sixth Amendment right to trial by jury).

To the extent that Petitioner challenges the scoring of his offense variables under state law, he is not entitled to relief. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). "[S]tate courts are the ultimate

13

expositors of state law." Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). See also, Thomas v. Foltz, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987) (holding that where petitioner seeks relief on the basis of a trial court's application of state sentencing guidelines, petitioner's claim is not cognizable on habeas review); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (holding that "federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures").

Nor is Petitioner entitled to relief on his claim that the trial court increased his sentence in reliance upon facts not found by a jury, in violation of the Sixth and Fourteenth Amendments. In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Michigan has an indeterminate sentencing system for most crimes, including causing the death of another person while operating a motor vehicle under the influence of intoxicants. The maximum term of imprisonment is set by law. Mich. Comp. Laws § 769.8(1); see also People v. Drohan, 475 Mich. 140, 160-61 (2006). In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court addressed indeterminate sentencing systems and held that such systems do not violate the Sixth Amendment. The Court explained:

> [The Sixth Amendment] limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in

> that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10-year sentence-and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

Blakely, 542 U.S. at 308-09.

Judicial factfinding may not be used to impose a sentence "beyond the prescribed statutory maximum." Apprendi, 530 U.S. at 490. Under Michigan law, the maximum sentence for second-degree murder is life or any number of years. Mich. Comp. Laws § 750.317. The sentencing court did not impose a sentence beyond the statutory maximum. Therefore, the sentencing scheme did not run afoul of the Sixth Amendment. Because Blakely does not apply to indeterminate sentencing schemes like the one utilized in Michigan, the trial court's sentence did not violate Petitioner's constitutional rights. See Tironi v. Birkett, No. 06-1557, 2007 WL 3226198, * 1 (6th Cir. Oct. 26, 2007) ("Blakely does not apply to Michigan's indeterminate sentencing scheme."). Petitioner's improper sentence claim is without merit.

## IV. Conclusion

For the foregoing reasons,

IT IS ORDERED that Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1) is conditionally **GRANTED**.

15

IT IS FURTHER ORDERED that Respondent take action to afford Petitioner a new trial within ninety (90) days of the date of this Order. If a new trial is not scheduled within ninety (90) days, Petitioner may apply for a writ to release Petitioner from custody.

IT IS FURTHER ORDERED that Respondent serve a copy of this Opinion and Order to the appropriate State Court and Prosecuting Attorney within ten (10) days' receipt of this Opinion and Order. A proxy of service must be filed by Respondent.

IT IS FURTHER ORDERED that Petitioner's Motion for Evidentiary Hearing [dkt. #39] is **DENIED AS MOOT**.

S/Denise Page Hood<br>
Denise Page Hood<br>
United States District Judge

Dated: March 31, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2008, by electronic and/or ordinary mail.

S/William F. Lewis<br>
Case Manager